# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAKAB SAUDI HOLDING COMPANY,<br><br>　　　Plaintiff,<br><br>v.<br><br>SAAD KHALID S AL JABRI,<br>KHALID SAAD KHALID AL JABRI,<br>MOHAMMED SAAD KH AL JABRI,<br>NEW EAST (US) INC.,<br>NEW EAST 804 805 LLC,<br>NEW EAST BACK BAY LLC,<br><br>　　　Defendants. | **Case No. 1:21-cv-10529-NMG** |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION TO REMAND</u>

TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .....................................................................................................4

    I.    The Parties ...............................................................................................4

    II.    Defendants' Fraudulent Scheme ..............................................................6

    III.    Discovery of the Fraudulent Scheme .......................................................7

    IV.    The Ontario Action ..................................................................................7

    V.    Massachusetts Action and Defendants' Removal.....................................9

ARGUMENT ........................................................................................................10

    I.    Standard For Removal ...........................................................................10

    II.    Defendants Fail To Establish Federal Jurisdiction Under *Grable* ........11

        A.    Sakab's Verified Complaint does not "necessarily raise" a federal issue .................................................................................11

        B.    Sakab's Complaint does not raise an "actually disputed" federal issue .................................................................................16

        C.    Sakab's Complaint does not raise a "substantial" issue of federal law.....................................................................................16

        D.    Sakab's claims are not "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."......................................................................................18

    III.    Sakab Is Entitled To An Award Of Attorneys' Fees And Costs............................20

CONCLUSION.....................................................................................................20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Almond v. Capital Properties, Inc.*, 212 F.3d 20 (1st Cir. 2000)..................................................2, 11

*Amoche v. Guarantee Trust Life Insurance Company*, 556 F.3d 41 (1st Cir. 2009) ....................10

*Barclays Bank PLC v. Franchise Tax Board of California*, 512 U.S. 298 (1994) ........................14

*Barclays Bank, S.A. v. Tsakos*, 543 A.2d 802 (D.C. 1988)............................................................15

*Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003) ............................................................10

*Berger v. Morgan*, No. 14-12164-GAO, 2014 WL 7375495 (D. Mass. Dec. 29,
   2014) .................................................................................................................................16, 19

*Danca v. Private Health Care Systems, Inc.*, 185 F.3d 1 (1st Cir. 1999) ......................................10

*Delgado v. Zaragoza*, 267 F. Supp. 3d 892 (W.D. Tex. 2016).......................................................18

*Dole Food Company v. Patrickson*, 538 U.S. 468 (2003) ..............................................................15

*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006)................................10, 17

*Enforcement Section of Massachusetts Securities Division of Office of Secretary
   of Commonwealth v. Scottrade, Inc.*, 327 F. Supp. 3d 345 (D. Mass. 2018).......................2, 11

*Estate of Heiser v. Islamic Republic of Iran*, 605 F. Supp. 2d 248 (D.D.C. 2009) ......................19

*Federal Insurance Company v. Tyco International Ltd.*, 422 F. Supp. 2d 357
   (S.D.N.Y. 2006) ..........................................................................................................................10

*Feldman v. KPMG LLP*, 438 S.W.3d 678 (Tex. App. 2014)..........................................................15

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545
   U.S. 308 (2005)................................................................................................................... *passim*

*Greenbriar Companies, Inc. v. Springfield Terminal Railway*, 477 F. Supp. 2d
   314 (D. Mass. 2007)....................................................................................................................19

*Gunn v. Minton*, 568 U.S. 251 (2013)....................................................................10, 11, 16, 17

*Handal v. State Street Bank & Trust Company*, 941 F. Supp. 2d 167 (D. Mass.
   2013) ...........................................................................................................................................19

*Kriegel v. Bank of America Corporation*, No. 07CV12246-NG, 2009 WL
    10693623 (D. Mass. Mar. 6, 2009) ........................................................................... 19

*Sung ex rel. Lazard Ltd. v. Wasserstein*, 415 F. Supp. 2d 393 (S.D.N.Y. 2006) .......................... 11

*Martin v. Franklin Capital Corporation*, 546 U.S. 132 (2005) ................................................. 20

*Massachusetts v. Exxon Mobil Corporation*, 462 F. Supp. 3d 31 (D. Mass. 2020) ..................... 13

*Massachusetts v. Wampanoag Tribe of Gay Head*, 36 F. Supp. 3d 229 (D. Mass.
    2014) ............................................................................................................................ 10

*McLaughlin v. Bayer Essure, Inc.*, No. CV 14-7315, 2018 WL 3535142 (E.D. Pa.
    July 23, 2018) .............................................................................................................. 16

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016) ........................ 19

*Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726
    F.3d 8 (1st Cir. 2013) .............................................................................................. 16, 17

*One and Ken Valley Housing Group v. Maine State Housing Authority*, 716 F.3d
    218 (1st Cir. 2013) ...................................................................................................... 10

*Pacheco de Perez v. AT&T Company*, 139 F.3d 1368 (11th Cir. 1998) ............................... 17, 18

*Patrickson v. Dole Food Company*, 251 F.3d 795 (9th Cir. 2001) ............................................ 14

*Ravasizadeh v. Niakosari*, 94 Mass. App. Ct. 123 (Mass. 2018) ............................................. 15

*Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986) ............................... 13, 14, 15, 16

*Rightstone, Inc. v. Elfers RRH, Inc.*, No. CV 15-13524-NMG, 2016 WL 7447553
    (D. Mass. June 14, 2016) ............................................................................................ 11

*Sakab Saudi Holding Company, et al. v. Saad Khalid S Al Jabri, et al.*, No. CV-
    21-00655418-00CL (Ontario Superior Court of Justice (Commercial List)) ................ *passim*

*Schwesinger v. Hurley*, No. 13-cv-11436-DPW, 2014 WL 1311756 (D. Mass.
    2014) ............................................................................................................................ 20

*Smith v. Kansas City Title & Trust Company*, 255 U.S. 180 (1921) .......................................... 10

*State of Qatar v. First Abu Dhabi Bank PSJC*, 432 F. Supp. 3d 401 (S.D.N.Y.
    2020) ......................................................................................................................... *passim*

*Torres v. Southern Peru Copper Corporation*, 113 F.3d 540 (5th Cir. 1997) .............................. 18

*United States v. Reynolds*, 345 U.S. 1 (1953) ....................................................................... 12

*W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corporation,*
   *International*, 493 U.S. 400 (1990)..................................................................................................14

*Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir. 1988)..................................................................10

**Statutes and Rules**

28 U.S.C. § 1331 ..............................................................................................................................9

28 U.S.C. § 1441 ........................................................................................................................9, 10

28 U.S.C. § 1446 ..............................................................................................................................9

28 U.S.C. § 1447(c) ....................................................................................................................4, 20

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d),
   1602-1611 .................................................................................................................................15

Mass. Gen. Laws Chapter 223A, § 5 ..............................................................................................9

Plaintiff Sakab Saudi Holding Company ("Sakab") respectfully submits this memorandum of law in support of its motion to remand.

## PRELIMINARY STATEMENT

The Court should remand this "state law" fraud action to the Massachusetts Superior Court. Contrary to Defendants' distorted description of Sakab's Verified Complaint, it is apparent that: (1) no claim in the Verified Complaint arises under federal law or turns on the resolution of a disputed issue of federal law; (2) this action does not involve the U.S. Government or any of its agencies; and (3) this action does not implicate U.S. Government "state secrets," national security programs, or foreign policy interests and, even if it did, that would not confer federal question jurisdiction.

Sakab filed the Verified Complaint on March 24, 2021 in the Massachusetts Superior Court for Suffolk County (the "Massachusetts Action"), alleging ten traditional "state law" causes of action: (i) breach of fiduciary duty, (ii) fraud, (iii) fraudulent misrepresentation, (iv) fraud by omission, (v) conversion, (vi) conspiracy, (vii) aiding and abetting, (viii) unjust enrichment, (ix) fraudulent transfer and (x) piercing the corporate veil. (Verified Compl. ¶¶ 99-169, ECF 1-1 (hereinafter "Verified Compl").) While filed as a plenary action, Sakab brought this suit, as it pleaded in the Verified Complaint, for the sole purpose of preserving the status quo with respect to property in Massachusetts, pending the resolution of a parallel lawsuit already underway in Canada entitled *Sakab Saudi Holding Co., et al. v. Saad Khalid S Al Jabri, et al.*, No. CV-21-00655418-00CL (Ontario Superior Court of Justice (Commercial List)) (the "Ontario Action"). (*Id.* ¶¶ 1, 5.) Specifically, Sakab seeks to secure pre-judgment attachments and record memoranda of *lis pendens* on eight luxury condominiums in Boston that were acquired by Defendant Saad Khalid S Al Jabri ("Al Jabri") and his sons Khalid Saad Khalid Al Jabri

1

("Khalid") and Mohammed Saad Kh Al Jabri ("Mohammed") (collectively, the "Al Jabri Family Defendants"), acting through their alter ego companies New East (US) Inc., New East 804 805 LLC and New East Back Bay LLC (collectively, the "New East Defendants"), using funds that Al Jabri fraudulently misappropriated from Sakab and its affiliated companies and fraudulently transferred to the New East Defendants.  (*Id.* ¶ 5.)  Once such preliminary relief is obtained, Sakab seeks to stay the Massachusetts Action pending resolution of the Ontario Action.  (*Id.*)  Sakab filed a motion for attachment, a motion for issuance of memoranda of *lis pendens* and a motion for a stay on the same day it filed its Verified Complaint.

The court in the Ontario Action, based on a substantial evidentiary record, had previously issued interim orders (the "Ontario Orders") restraining Al Jabri from dissipating his assets worldwide (specifically including the eight Boston condominiums at issue) and appointing a receiver over the Boston properties pending the conclusion of that lawsuit.  (*Id.* ¶¶ 1, 9.)  The Ontario Court requested the aid and recognition of foreign courts, including in the United States, in giving effect to its orders.  (*Id.* ¶ 1.)

On March 29, the day Sakab's motions were scheduled to be heard in the Massachusetts Superior Court, Defendants removed the case to this Court.  Defendants' purported basis for removal is the circumscribed and "controversial" "federal ingredient" doctrine defined in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  *See Almond v. Cap. Properties, Inc.*, 212 F.3d 20, 23 (1st Cir. 2000) (citations omitted); *see also Enf't Section of Mass. Sec. Div. of Off. of Sec'y of Commonwealth v. Scottrade, Inc.*, 327 F. Supp. 3d 345, 351 (D. Mass. 2018).  The U.S. Supreme Court and First Circuit, however, have repeatedly held that *Grable* is a narrow doctrine, providing for federal jurisdiction only where interpretation of a substantial and disputed issue of federal law is necessary to decide the case.  Defendants do not

2

identify in their removal notice any issue of federal law that is substantial and disputed, much less necessary to resolving Sakab's "state law" fraud claims.

Even though they concede that the Verified Complaint does not affirmatively allege a federal claim, Defendants attempt to add the necessary "federal ingredient" by characterizing this case as part of a Saudi political dispute that implicates U.S. governmental interests.  Defendants assert that, as a result, the case will require resolution of fact issues that will so thoroughly implicate U.S government interests as to create a substantial federal question. ("Notice of Removal, ¶¶ 42-44, ECF 1 (hereinafter "ECF 1").)  That is nonsense.

*First*, and most critically, the narrow "federal ingredient" doctrine does not apply.  Defendants speculate about federal foreign policy and national security implications of fact issues that may or may not arise during the course of this case—even assuming it were going to be litigated here—but they have not shown an actual disputed question of federal law that must be decided in order to resolve the state-law claims at issue in this case.  Defendants thus have failed to meet their substantial burden of proving that removal is proper.

*Second*, Defendants made the same arguments to the Ontario Court, asserting that the plaintiffs' claims there—which include those in the Verified Complaint—are part of a broad political conspiracy against Al Jabri and others.  The Ontario Court saw through the subterfuge, characterizing this "defense" as "more of a political treatise than any concrete response to the serious allegations raised" by Sakab and the other plaintiffs in the Ontario Action.  (*See* Verified Compl. ¶ 14.)  The Ontario Court found that even if there were political factors at play behind the scenes at some point, in fact Sakab and its affiliates were and are independent companies with actual, legitimate businesses, and have the right to assert and litigate civil fraud claims.

(*See id.* ¶ 16.)   The Ontario Court found that "overwhelming evidence of fraud has been presented to court" by Sakab and its affiliate companies.  (*See id.* ¶ 14.)

Moreover, as the Verified Complaint indicates, Sakab has no intention and no desire to litigate its claims on the merits in the Massachusetts Action.  Its sole purpose is to obtain pre-judgment relief on the basis of comity to the Ontario Orders (which were issued based on an extensive evidentiary record), and then to stay the Massachusetts Action.  So there will be no occasion to litigate the purported fact issues that allegedly raise federal concerns.

This case should be remanded.  In addition, because Defendants' basis for removal is unreasonable and foreclosed by Supreme Court and First Circuit precedent, this Court should award Sakab its attorneys' fees under 28 U.S.C. § 1447(c).

## BACKGROUND

### I.     The Parties

Plaintiff Sakab is one of seventeen Saudi companies (the "Group Companies") established between 2008 and 2016 for the purpose of supporting anti-terrorism activities, funded in part by the KSA's Ministry of Finance.  (Verified Compl. ¶ 17.)   The Group Companies also engaged in actual legitimate business enterprises in the fields of transportation, aviation, technology and security.   Sakab and the other Group Companies are independent corporate entities currently owned by Tahakom Investments Company ("TIC"), which itself is a private corporate entity.   (*Id.* ¶¶ 18, 24.)   TIC is owned by the Public Investment Fund of Saudi Arabia ("PIF"), which is an independent sovereign wealth fund of the KSA.   (*Id.* ¶ 24.)   Sakab, the other Group Companies, TIC and PIF each have separate legal personalities.   (*See* Aff. of Abdulaziz H. Al Fahad (Feb. 10, 2021) (attached as Appendix "A") ¶¶ 5-6.)   PIF is separate from

the KSA government, and operates autonomously with full powers to manage its activities and affairs.  (*Id.* ¶¶ 7-24.)

Defendant Al Jabri is a former senior Saudi government official in its Ministry of Interior.  On September 10, 2015, Al Jabri was stripped of his titles and positions.  (Verified Compl. ¶ 25.)  He fled the KSA while under investigation in 2017, and since then has been a resident of Toronto, Ontario, Canada, along with his wife and several members of his family.  (*Id.* ¶ 28.)  Defendants Khalid and Mohammed are the beneficial owners of tens of millions of dollars in misappropriated funds and real estate in the United States and elsewhere that was purchased with misappropriated funds, including the Boston properties at issue.  (*Id.* ¶¶ 29, 30.)

The New East Defendants are Delaware and Massachusetts entities and the registered owners of the Boston properties at issue in this action.  (*Id.* ¶¶ 29-36.)  The Al Jabri Family Defendants are the ultimate beneficial owners of the New East Defendants, and the New East Defendants served and continue to serve as the Al Jabri Family Defendants' alter egos, and were and are completely dominated and controlled by them.  (*Id.* ¶¶ 29-36.)

The Ontario Court found that "Al Jabri is adept at moving money around the world including establishing corporations (such as the New East [Defendants]) to permit him to hold property indirectly" and that "the risk of removal or dissipation [of assets] may be established by inference given Al Jabri's sophisticated, international, and multilayered means of moving money and assets."  (*See id.* ¶ 11.)  In fact, in the Ontario Action, Al Jabri testified that beginning in 2017 he had "gifted" most of his assets to his sons, including his ownership in the New East Defendants.  (*See id.*, Ex. 5 ("Ruling on Set Aside Motions") ¶¶ 78-79.)

## II.    Defendants' Fraudulent Scheme

The Verified Complaint—like the Ontario Action—results from comprehensive forensic investigative and financial tracing efforts performed by Deloitte Financial Advisory Services Limited ("Deloitte").   As the Verified Complaint details, those efforts show that billions of dollars were misappropriated from Sakab and its affiliated companies, which had been under the direction and control of Defendant Al Jabri from 2008 until 2017, by means of direct payments to Al Jabri and his co-conspirators, and through a variety of more complicated activities.

As alleged in the Verified Complaint, during his time working in the Saudi government, Al Jabri used his position and authority to appoint his family members and close friends as nominee shareholders and directors of Sakab and other Group Companies.  (*Id*. ¶ 47.)  Al Jabri used his ability to exercise control over Sakab to cause Sakab and its affiliates to make unauthorized and improper direct payments to his own personal accounts and to his family members and friends—usually "off the books."  (*Id*. ¶ 20, 61-62.)   Other payments were characterized as "profit distributions" owed to Al Jabri and the nominee shareholders he had installed.   These payments, however, were unlawful, and bore no relationship to the Group Companies' actual profits.  (*Id*. ¶¶ 63-66.)  The payments continued for nearly two years after Al Jabri was dismissed from his Saudi government positions in September 2015.  Al Jabri received close to $200 million in direct payments from Sakab after he was removed from the KSA government.  (Alnowaiser Aff., Ex. 1 ("Deloitte Report") at 21 ("Table 5.0"), ECF 1-4.)

To conceal the vast sums of money misappropriated from Sakab and other Group Companies, Al Jabri, assisted by his sons Khalid and Mohammed, acquired real estate and corporate assets around the world.  (Verified Compl. ¶ 70.)  Between 2013 and 2019, Al Jabri and sons formed the New East Defendants, and through them purchased eight luxury

condominiums in Boston with funds Al Jabri had misappropriated from Sakab and fraudulently transferred to the New East Defendants.  (*Id.* ¶¶ 86-92.)  Al Jabri, Khalid and Mohammed remain in control of the New East Defendants and, thus, the Boston properties.  (*Id.* ¶ 73.)

## III.    Discovery of the Fraudulent Scheme

In connection with the transfer of ownership of Sakab and other Group Companies to TIC, Ernst & Young LLP ("EY") was engaged in 2017 to perform due diligence and valuation of several Group Companies.  (*Id.* ¶ 93.)  Because EY's review identified numerous irregularities, Deloitte was engaged to perform a series of forensic investigations, of expanding scope, as more irregularities were found.  Deloitte gave particular focus to Sakab as the entity used as the "clearinghouse" for funds and the conduit for disbursing funds to the other Group Companies. (*Id.* ¶¶ 93-95.)  Deloitte issued an extensive preliminary report in December 2019.[1]

As a result of Deloitte's findings, Sakab's Ontario counsel engaged Deloitte as a forensic expert.  Deloitte issued a final report on January 18, 2021, which was submitted as evidence in the Ontario Action (and later filed in the record in the Massachusetts Action).  (*See* Alnowaiser Aff., Ex. 1 ("Deloitte Report"), ECF 1-4.)  Deloitte has traced billions of misappropriated dollars from Sakab and the other Group Companies to the hands of Al Jabri and his co-conspirators.

## IV.    The Ontario Action

On January 22, 2021, Sakab and nine other Group Companies brought the Ontario Action against Al Jabri and a number of co-conspirators, including all Defendants in the Massachusetts Action.  (Verified Compl. ¶ 7.)  Sakab and the other plaintiffs in the Ontario Action submitted an

---

1.  In connection with the effort to trace the movement of these funds, Sakab brought a motion seeking a disclosure order (a "*Norwich* Order") from the Ontario Superior Court of Justice.  (*Id.* ¶ 97.)  On December 18, 2020, the Ontario court granted that motion, ordering the disclosure to Sakab of certain information related to funds transferred to specified individuals and entities.  (*Id.*)  Through the order, Sakab obtained relevant information from the KSA Public Prosecutor and certain financial institutions.

extensive evidentiary record that described in detail the extent of the fraudulent scheme perpetrated by Defendants and forensically traced the flow of misappropriated funds through Sakab and its affiliated companies to Al Jabri and his family members and friends.  The record included:  (1) a 111-page affidavit of Abdulaziz Alnowaiser, the Chief Executive Officer of TIC and General Manager of Sakab and other Group Companies, with 248 supporting exhibits; (2) the 156-page Deloitte Report along with hundreds of supporting exhibits; and (3) an expert report on Saudi law prepared by a Saudi lawyer.[2]  (*Id.* ¶¶ 7-8.)   Based on that massive evidentiary record, the Ontario Court issued *ex parte*:  (1) a "*Mareva*" order freezing Al Jabri's assets worldwide; (2) an order appointing a receiver over certain assets and properties, including the eight Boston condominiums at issue in the Massachusetts Action; and (3) another *Norwich* Order requiring disclosure from certain financial institutions and other entities.  (*Id.* ¶ 9.)

Al Jabri moved to set aside these orders, submitting extensive supporting briefs and affidavits.  Each party had the opportunity to cross-examine other parties' witnesses.  (*Id.* ¶ 15.) The Ontario court held a day-long hearing on February 19, 2021 at which the parties were able to present their evidence and legal arguments.  (*Id.*)  Contrary to Defendants' assertion (ECF 1, ¶ 27), therefore, Al Jabri in fact had a full opportunity to challenge the Ontario court's *ex parte* orders on the merits.  But he chose not to.  (Verified Compl. ¶ 15.)  Instead, Al Jabri sought to set aside the Ontario Orders on the ground that plaintiffs had not made a "full and frank disclosure" of material facts and defenses (a requirement under Ontario law for *ex parte* relief). (*Id.*)  In particular, Al Jabri unsuccessfully argued that plaintiffs failed to disclose to the Ontario Court Al Jabri's allegations that the Ontario Action is not a commercial dispute, but rather a politically driven attack, allegedly masterminded by the current Saudi Crown Prince through PIF

---

2.  Sakab submitted much of this evidence to the Massachusetts Superior Court in support of its emergency motions for attachment and *lis pendens*.  (*See* Alnowaiser Aff. and Ex. 1 – 84, ECF 1-3 – 1-16.)

and TIC, which Al Jabri asserts are state-owned companies that the Crown Prince controls (*Id.* ¶ 16 & Ex. 5)—allegations and arguments very similar to those that Defendants make here in their removal notice.  The Ontario court rejected those arguments and denied Al Jabri's set-aside motion, finding that Sakab and other Group Companies operate legitimate businesses and "have a right under the civil law to pursue their claims against [Al Jabri]."[3]  (*Id.* Ex. 5.)

## V.   Massachusetts Action and Defendants' Removal

The Massachusetts Action filed in Superior Court is entirely ancillary to the ongoing Ontario Action; it is styled as a plenary lawsuit solely because there has been no final judgment in the Ontario Action that has conclusive effect in Massachusetts courts under Mass. Gen. Laws ch. 223A, § 5.  Accordingly, simultaneously with the Verified Complaint, Sakab filed motions for attachment and *lis pendens*, arguing that the Ontario Orders are entitled to comity and deference by the Massachusetts Superior Court, and are sufficient to support the interim relief Sakab seeks.  At the same time, Sakab filed a motion for a stay, requesting that the Massachusetts Action be stayed once preliminary relief is granted, pending final resolution of the Ontario Action.  On March 29, 2021, two hours before the hearing on Sakab's motions, Defendants Al Jabri and Khalid filed a Notice of Removal, purportedly under 28 U.S.C. §§ 1331, 1441, and 1446, on the ground the Sakab's claims present "substantial federal questions."  (ECF 1, at 1.)  The other Defendants filed Notices of Consent to Removal.  (ECF 1-17, 1-18.)

---

3.   On March 11, 2021, the Ontario Court issued the formal order denying Al Jabri's set-aside motion, and extended the interim Ontario Orders.  (*Id.* ¶ 16.)  In their removal notice, Defendants incorrectly assert that this ruling "is currently being appealed" (ECF 1, ¶ 27); in fact, Defendants have sought leave to appeal the interim orders, but leave to appeal has not yet been granted.

## ARGUMENT

### I.   Standard For Removal

A civil action brought in state court is removable to federal district court only if the federal court would have had original jurisdiction over the claim.  28 U.S.C. § 1441.  The removing party has the burden of establishing the federal court's jurisdiction.  *Amoche v. Guar. Trust Life Ins. Co*., 556 F.3d 41, 48 (1st Cir. 2009).  The grounds for removal are strictly construed and uncertainties are resolved in favor of remand.  *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).  In considering a motion to remand, a district court "accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."  *State of Qatar v. First Abu Dhabi Bank PSJC*, 432 F. Supp. 3d 401, 406 (S.D.N.Y. 2020) (quoting *Federal Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006)); *see also Willy v. Coastal Corp.*, 855 F.2d 1160, 1163-64 (5th Cir. 1988).

"As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim," *i.e.*, a claim created by federal law.  *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).  Defendants concede that the Verified Complaint does not affirmatively allege a federal claim.  Instead, they argue that Sakab's claims present a "substantial federal issue" under the test adopted by the U.S. Supreme Court in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) and *Gunn v. Minton*, 568 U.S. 251 (2013).[4]  (ECF 1, ¶¶ 31–33.)  The Supreme Court has made clear that this is an extremely rare exception to the general basis for federal-question jurisdiction and arises only in a "special and small category" of cases.  *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S.

---

[4]   *See One and Ken Valley Hous. Group v. Me. St. Hous. Auth*., 716 F.3d 218, 224 (1st Cir. 2013).  Sometimes it is referenced as the "*Smith*" doctrine, *see Massachusetts v. Wampanoag Tribe of Gay Head*, 36 F. Supp. 3d 229, 232 (D. Mass. 2014) (citing *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921)).

677, 700 (2006).   The First Circuit has admonished that the "substantial federal issue" exception—often called the "federal ingredient doctrine"—is "controversial," and that while it "endures in principle [it] should be applied with caution and various qualifications."  *Almond*, 212 F.3d at 23 (citations omitted); *see also Enf't Section of Massachusetts*, 327 F. Supp. 3d at 351 ("Federal ingredient jurisdiction is 'controversial' and should be applied sparingly.").

## II.     Defendants Fail To Establish Federal Jurisdiction Under *Grable*

To meet their burden of proving that the present matter falls into the "special and small category" of removable cases that do not affirmatively allege a federal claim, Defendants must meet each requirement of the four-part test laid out in *Grable*.  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  Defendants must show that the complaint:  (1) "necessarily raise[s]" a federal issue, which must be (2) "actually disputed" and (3) "substantial," and (4) the case must be "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*. at 258.  Defendants have failed to establish any of the four necessary *Grable* requirements.

### A.     Sakab's Verified Complaint does not "necessarily raise" a federal issue

A federal issue is "necessarily raised" by a state-law claim when a federal issue <u>must</u> be decided in order to resolve the claim.  *See, e.g.*, *Enf't Section of Massachusetts*, 327 F. Supp. 3d at 351.  Under the narrow *Grable* doctrine, while the claim does not have to be created by federal law as in the normal federal-question case, the state law claim must turn on a disputed application or interpretation of federal law—as the state law quiet-title claim in *Grable* rose or fell on the interpretation of a significant issue of federal tax law.  *See Qatar*, 432 F. Supp. 3d at 414, 415 (citing cases).  Thus, a federal issue is "necessary to the adjudication of any claims found in the complaint" only if a cause of action "necessarily stands or falls based on a particular interpretation or application of *federal law*."  *Sung ex rel. Lazard Ltd. v. Wasserstein*, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006) (emphasis added); *see, also Rightstone, Inc. v. Elfers RRH,*

*Inc.*, No. CV 15-13524-NMG, 2016 WL 7447553, at *6 (D. Mass. June 14, 2016) ("[T]he claim is that [the defendant] breached its fiduciary duty . . . This is a straightforward state law claim; no federal issue is 'necessarily raised.'").

Defendants argue that, in order to decide Sakab's "state law" fraud and fiduciary-duty claims, it will be necessary to examine fact issues broadly relating to:  (i) whether Sakab, the other Group Companies and their officers and directors acted in accordance with Saudi law or at the direction of then-Saudi governmental leadership, "at times in coordination with the United States"; (ii) the role of the then-Crown Prince and his authority to approve expenditures involving Al Jabri; (iii) whether Al Jabri's action were consistent with the broad mandate ordered by the Saudi King, "including in the context of the Saudi partnership in engaging in counter-terrorism activities," and the like.  (ECF 1, ¶¶ 42-44.)  According to Defendants, the existence of these purported fact issues will implicate U.S. foreign policy and national security interests so significantly as to create a substantial federal question.[5]  (*Id.* ¶¶ 44-45.)

It is of course preposterous to suggest that Saudi law or policy, even in "coordination" with the U.S. government, could possibly have authorized or condoned the transfer of billions of dollars in governmentally-originated funds from the Group Companies to the private accounts of Al Jabri and his friends, family and business associates.  But even accepting that notion *arguendo*, the flaw in Defendants' theory is that they can point to no federal rule of decision— no "federally created obligations, duties, or rules of liability," *Qatar*, 432 F. Supp. 3d at 414— essential to Sakab's straightforward state-law claims, which in no way turn on the application or

---

5. Defendants also imply that Sakab's claims raise a federal "state secrets" issue.  (ECF 1, ¶ 45.)  However, Defendants lack standing to raise this issue because the United States, not any private party, holds the privilege against discovering military and state secrets.  *United States v. Reynolds*, 345 U.S. 1, 7 (1953) ("The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party.").  Unless and until the United States asserts this privilege, Defendants' innuendo concerning national security is no more than a self-serving assertion entitled to no credence.

interpretation of federal law.  Assertions that the litigation may implicate U.S. foreign policy and security concerns do not raise a substantial federal question.  *See id.* at 416; *see also Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 44 (D. Mass. 2020) ("Contrary to [defendant's] caricature of the complaint, [plaintiff's] allegations do not require any forays into foreign relations or national energy policy. It alleges only corporate fraud").

*Qatar* is instructive.  The government of Qatar sued United Arab Emirates ("UAE") and Saudi banks in New York state court asserting "purely state-law" fraud-related claims, alleging that the banks had conspired with the Saudi, UAE and Bahrain governments to try to cripple Qatar's economy as part of a political dispute.  *Qater*, 432 F. Supp. 3d at 407.  The banks removed, asserting federal question jurisdiction under *Grable* on the ground that Qatar's state-law claims—which involved one sovereign ally of the U.S. alleging the defendant banks were conspiring with three other sovereigns that are U.S. allies—implicated serious federal foreign policy and national security sensitivities.  *Id.* at 407, 416.  The district court rejected the banks' argument and remanded the case to state court, finding that no federal issue was "necessarily" raised.  *Id.* at 416-17.  The same result should be reached in this case.  As the *Qatar* court recognized, even if a matter may be "of serious national and international concern," "generalized references to foreign policy wholly fail to demonstrate that a federal question is essential to resolving" a plaintiff's state law claims.  *Id.* at 416 (internal quotations omitted).

Defendants' reliance on *Republic of Philippines v. Marcos*, 806 F.2d 344, 352 (2d Cir. 1986) is misplaced.  In that case, a foreign nation sued its former President and First Lady pursuant to the foreign government's executive orders requesting other governments to freeze—and ultimately seize—their assets.  *Id*. at 347.  The Second Circuit concluded that the question "[w]hether any confiscatory action by the Philippines will be entitled to credit in the United State

courts" is a "question that will be governed by federal [common] law" regardless of how it is pleaded. *Id.* at 353. According to the *Marcos* court, deciding that question would "necessarily require determinations that will directly and significantly affect American foreign relations." *Id.* at 352.

The very foundation of the *Marcos* decision is questionable, however. In the decades since *Marcos*, the Supreme Court has limited the role of federal common law in matters of foreign relations. *See, e.g., W.S. Kirkpatrick & Co., Inc. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 409-10 (1990) (declining to expand the act of state doctrine to cases that may "embarrass" foreign governments); *Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 323-28 (1994) (declining to pre-empt state tax law under the dormant Foreign Commerce Clause). Indeed, the Ninth Circuit expressly rejected *Marcos* as misconstruing Supreme Court precedent by basing federal jurisdiction on an "inherently political judgment" of whether and how a case affects the foreign policy interests of the United States or a foreign government, a judgment "that courts—whether state or federal—are not competent to make." *Patrickson v. Dole Food Co.*, 251 F.3d 795, 799-805 (9th Cir. 2001), *aff'd in part, cert. dismissed in part*, 538 U.S. 468 (2003). The law today, therefore, does not support Defendants' *Marcos*-based proposition that any case, much less this case, "necessarily raises" a federal question simply because it may have foreign policy implications.

In any event, the circumstances in *Marcos* are not the circumstances in this case. This is not a case brought by a foreign sovereign to enforce its unilateral confiscatory order directed against its former president. This is an action asking a state court, as a matter of comity, to give effect to a Canadian court's orders issued upon a substantial evidentiary record and with due process. That is an issue of state law, routinely decided by state courts, and does not require

resort to federal law.  *See Barclays Bank, S.A. v. Tsakos*, 543 A.2d 802, 808 (D.C. 1988)

(holding that state trial court had discretion to maintain pre-judgment attachment and stay state

court proceedings pending the outcome of foreign proceedings); *Feldman v. KPMG LLP*, 438

S.W.3d 678, 684 (Tex. App. 2014) (finding state trial court did not err in dismissing claims

based on comity due to presence of a parallel action in Canada); *Ravasizadeh v. Niakosari*, 94

Mass. App. Ct. 123, 129 (Mass. 2018) (under the doctrine of comity "Massachusetts generally

will recognize and enforce valid judgments rendered by a foreign court") (citations omitted)

(emphasis removed).

Moreover, this case does not involve the kind of foreign policy concerns at issue in

*Marcos*.  Sakab does not seek to resolve in U.S. courts the issues raised by Defendants in their

removal notice, as those issues (to the extent they are relevant) are already being addressed in the

ongoing Canadian litigation.  And even considering the underlying merits of Sakab's state law

claims, this case involves the alleged misappropriation by government officials and private

individuals (not a former President).  Sakab's claims are based on events that took place between

five and thirteen years ago.  The action is brought not by a sovereign state, but by a private

company.  And, contrary to Defendants' assertion, neither the KSA nor its Crown Prince is

directing this action, nor is Sakab an "instrumentality" of the KSA or the Crown Prince.  (Aff. of

Abdulaziz H. Al Fahad (Feb. 10, 2021) ¶¶ 7-24).[6]  Sakab is an independent corporate entity with

independent management.  Although irrelevant to its claims, Sakab is owned by TIC, which

itself is an independent corporate entity owned by the PIF, an independent and autonomous

_____

6.  As the U.S. Supreme Court has recognized in the context of applying the Foreign Sovereign Immunities Act
(FSIA), companies like Sakab, separated by one or more "intermediate tiers" from a foreign government, are
not agencies or instrumentalities of the foreign government.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 469
(2003) ("Only direct ownership satisfies the statutory requirement.").  The issue whether an entity is an
instrumentalist of a foreign state is determined as of the date the Complaint is filed.  *Id.*

sovereign wealth fund.   (Aff. of Abdulaziz H. Al Fahad ¶¶ 5-6; Verified Compl. ¶¶ 17-18.)  Thus, unlike *Marcos,* nothing about this case is going to "directly and significantly affect American foreign relations."  *Marcos*, 806 F.2d at 352.

**B.**    **Sakab's Complaint does not raise an "actually disputed" federal issue.**

Defendants' removal notice is also deficient on the second *Grable* requirement that a federal issue must be "actually disputed."   A defendant that "fails to elaborate on the precise contours" of an actual dispute of federal law "or explain how it is central to the resolution of Plaintiff's claims . . . has simply not established that there is an actual disagreement about an interpretation of federal law that is material to the claims at issue."  *McLaughlin v. Bayer Essure, Inc.*, No. CV 14-7315, 2018 WL 3535142, at *4 (E.D. Pa. July 23, 2018).   Defendants assert generally that Sakab's claims involve foreign relations and national security interests (*see* ECF 1, ¶¶ 44, 45), but fail to identify the "precise contours" of any actual disagreement about an interpretation of federal law that is material to Sakab's state law fraud claims, or explain how the application of federal law could change the outcome of this case.

**C.**    **Sakab's Complaint does not raise a "substantial" issue of federal law.**

Defendants do not meet their burden of establishing a "substantial" issue of federal law.  The mere fact that a court might decide a federal issue in the course of resolving a state-law claim does not satisfy the *Grable* substantiality requirement.  *See Berger v. Morgan*, No. 14-12164-GAO, 2014 WL 7375495, *1 (D. Mass. Dec. 29, 2014) ("Obviously, not every state-law claim raising a federal issue can invoke federal question jurisdiction.  Indeed, such cases will be exceptional.") (quotations omitted).  Rather, the federal issue must be "not only important to the parties, but important to the federal system" as a whole.  *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 13–14 (1st Cir. 2013) (citing *Gunn*, 568 U.S. at 260).

16

The First Circuit has identified two circumstances in which a federal issue is "important to the federal system as a whole" in satisfaction of the *Grable* substantiality requirement: (1) where "the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases"[7] and (2) "where the resolution of the issue has 'broader significance . . . for the Federal Government.'" *Id.* at 14 (quoting *Gunn*, 568 U.S. at 260). Here, like the plaintiff in *Mayaguez*, Defendants "seriously overstate[] the import of the federal issues" in asserting that Sakab's common law fraud claims fit within the second category (*see* ECF 1, ¶ 44). *Mayaguez*, 726 F.3d at 14. The *Mayaguez* court clarified that state-law claims between private parties are likely to have a "broader significance" to the U.S. Government where they "directly challenge[] the propriety of an action taken by 'a federal department, agency, or service.'" *Id.* (quoting *Gunn*, 568 U.S. at 260, and *Empire Healthcare*, 547 U.S. at 700). Defendants do not establish how the fact-bound and situation-specific claims in the Verified Complaint directly challenge the propriety of an action taken by a federal agency or otherwise rise to the level of having a "broader significance" to or impact on the development of federal law or administration of a federal program.[8]

Defendants' reliance on *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1377 (11th Cir. 1998) is also misplaced. (*See* ECF 1, ¶ 34.) Defendants incorrectly cite *Pacheco* for the proposition that the federal interest is particularly strong in cases where a foreign government or

---

7.  The U.S. Supreme Court has held that, to raise a new interpretation of a federal statute or regulation, a claim must "present[] a nearly pure issue of law, the resolution of which would establish a rule applicable to [similar] cases." *See Empire Healthchoice*, 547 U.S. at 681 (no "substantial" federal issue where the claim was "fact-bound and situation-specific"). Sakab's state law fraud claims are highly fact-specific, and do not identify any pure issue of federal law that must be decided in this case that would apply to similar cases. Moreover, as Sakab does not seek to litigate its claims on the merits in the Massachusetts Action, there will be no occasion to address any of these highly fact-specific claims in Massachusetts.

8.  *Compare Grable*, 545 U.S. at 315 (federal tax question was substantial because it has broader significance to federal government's ability to recover delinquent taxes) with *Gunn*, 568 U.S. at 261 (federal patent law question was not substantial because it was a "backward looking" issue in a malpractice case and state court decision on the issue would have no impact on federal patent litigation).

instrumentality is a named party to the lawsuit.  (*Id.*, ¶ 35.)  In fact, the *Pacheco* court held that a foreign state's interest in the outcome of a state-law claim does *not* necessarily mean that the case implicates foreign policy concerns.  *Pacheco de Perez*, 139 F.3d at 1376-78 (declining to find a sufficiently substantial federal issue as a result of limited evidence that the case would threaten the interested country's economic vitality or "strike[] at the heart of the economic and sovereign interests of the foreign nation.").

In any event, no foreign government or instrumentality is a party here.  The Verified Complaint alleges that a former government official and others stole a significant amount of money from private companies that had been funded in part by the Saudi government.  (Verified Compl. ¶¶ 32, 34, 36.)  There is no suggestion, however, that Sakab's claims threaten the KSA's economic vitality or "strike[] at the heart of the economic and sovereign interests" of the KSA. *See Delgado v. Zaragoza*, 267 F. Supp. 3d 892, 896–97 (W.D. Tex. 2016) (noting that "'important [federal] policy concerns' are present where a suit *significantly implicates* a foreign country's sovereign and economic interests") (emphasis added) (quoting *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 543 (5th Cir. 1997)).

### D.    Sakab's claims are not "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."

Defendants have asserted no facts in the removal notice that satisfy the fourth *Grable* requirement, under which Defendants must demonstrate that removal of Sakab's claims would not upset the "congressionally approved balance of federal and state judicial responsibilities" of which federal courts must be solicitous.  *Grable*, 545 U.S. at 314.  As pleaded in the Verified Complaint, Sakab brought this state-law fraud action in Massachusetts Superior Court for the sole purpose of preserving the status quo, pending the resolution of the parallel Ontario Action. (Verified Compl. ¶ 5.)  Ordering pre-judgment attachment of real property and recording *lis*

*pendens* are traditionally and fundamentally functions governed by state law.  *See Greenbriar Companies, Inc. v. Springfield Terminal Ry.*, 477 F. Supp. 2d 314, 317 (D. Mass. 2007) ("attachment is [] a creature of state law" and is only available as provided by state law); *Est. of Heiser v. Islamic Republic of Iran*, 605 F. Supp. 2d 248, 250 (D.D.C. 2009) ("*[L]is pendens* is a doctrine of state law").

Even if Sakab's underlying state law claims of breach of fiduciary duty and fraud were to be litigated in Massachusetts, these are traditional state law claims litigated in state court in the absence of diversity.  *See, e.g., Handal v. State St. Bank & Tr. Co.*, 941 F. Supp. 2d 167, 184 (D. Mass. 2013) (common law claims including breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment, were all "based on state law rather than federal law"); *Berger*, 2014 WL 7375495, at *1 ("[c]ivil conspiracy is a Massachusetts common law tort, and state law thus provides the cause of action."); *Kriegel v. Bank of Am. Corp.*, No. 07CV12246-NG, 2009 WL 10693623, at *2 (D. Mass. Mar. 6, 2009) ("[p]recisely what a plaintiff must show in order to pierce the corporate veil is a matter of state law").

The U.S. Supreme Court has "reiterated the need to give due regard to the rightful independence of state governments—and more particularly, to the power of the States to provide for the determination of controversies in their courts."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1573 (2016) (internal quotations omitted).  Removing this case would undermine state court authority to impose pre-judgment attachment over Massachusetts property as a matter of comity to a foreign court, and to decide disputes over state-law fraud claims.  There is no federal interest here strong enough to warrant disrupting the constitutionally and congressionally-mandated delineation between the federal courts' limited jurisdiction and the state courts' traditional jurisdiction.

**III.    Sakab Is Entitled To An Award Of Attorneys' Fees And Costs**

Courts may award attorney's fees under 28 U.S.C. § 1447(c) "where the removing party lacked an objectively reasonable basis for seeking removal." *Schwesinger v. Hurley*, No. 13-cv-11436-DPW, 2014 WL 1311756, at *5 (D. Mass. 2014) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Defendants do not identify in their notice of removal a single issue of disputed federal law that necessarily must be applied or interpreted in order to resolve Sakab's state law claims. Instead, Defendants refer to possible fact issues that might raise foreign policy and national security concerns, ignoring the fact that Sakab only seeks relief necessary to preserve the status quo, not to adjudicate the fact issues that Defendants claim create the federal concern. Defendants' removal of the present action a mere two hours before an emergency hearing on Sakab's motions for attachment and *lis pendens* is further evidence that their removal efforts are "nothing other than a transparent attempt to stave off a day of reckoning." *Schwesinger*, 2014 WL 1311756, at *5. An award of attorneys' fees and costs is warranted because Defendants had no reasonable basis for removal.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant its motion to remand.

Dated: April 9, 2021

Respectfully submitted,

SAKAB SAUDI HOLDING COMPANY,

By its attorneys,

/s/ Douglas B. Rosner
Richard M. Zielinski (BBO# 540060)
Douglas B. Rosner (BBO# 559963)
Denis M. King (BBO# 555838)
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Telephone: (617) 482-1776
Facsimile: (617) 574-4112
rzielinski@goulstonstorrs.com
drosner@goulstonstorrs.com
dking@goulstonstorrs.com

-and-

William R. Stein (*Pro Hac Vice*)
Samuel W. Salyer (*Pro Hac Vice*)
HUGHES HUBBARD & REED LLP
1775 I St., N.W.
Washington, D.C. 20006
Telephone: (202) 721-4600
Facsimile: (202) 721-4646
william.stein@hugheshubbard.com
samuel.salyer@hugheshubbard.com

Neil J. Oxford (*Pro Hac Vice*)
Meaghan Gragg (*Pro Hac Vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 299-6000
neil.oxford@hugheshubbard.com
meaghan.gragg@hugheshubbard.com

**<u>Certificate of Service</u>**

I certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants who have appeared in this case as identified on the Notice of Electronic Filing (NEF), with a courtesy copy sent by electronic mail, on April 9, 2021.

/s/ Douglas B. Rosner

22

100477374