## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SAKAB SAUDI HOLDING COMPANY,

      Plaintiff,

v.

SAAD KHALID S AL JABRI,
KHALID SAAD KHALID AL JABRI,
MOHAMMED SAAD KH AL JABRI,
NEW EAST (US) INC.,
NEW EAST 804 805 LLC,
NEW EAST BACK BAY LLC,

      Defendants.

Case No. 1:21-cv-10529-NMG

### DR. SAAD ALJABRI'S RESPONSE TO THE
### U.S. GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER

The United States and its Director of National Intelligence have concluded that "information implicated by this litigation . . . reasonably could be expected to cause serious, and in some cases exceptionally grave, damage to the national security of the United States." Declaration of Avril Haines, ECF No. 47-1 ("Haines Decl.") ¶ 10; U.S. Mot. for a Protective Order, ECF No. 47 (hereinafter "U.S. Mot.").

The United States' conclusion is justified. As a senior intelligence officer in the Ministry of Interior of the Kingdom of Saudi Arabia and the most senior advisor to former Crown Prince Mohammed bin Nayef, Defendant Dr. Saad Aljabri ("Dr. Saad") has dedicated his career to establishing and bolstering the security and intelligence partnership between the United States and the Kingdom of Saudi Arabia in the face of serious threats to both. His work has saved "hundreds—

perhaps thousands—of lives" in the United States.[1] And Dr. Saad takes his obligations seriously, including his commitment to protecting sensitive information, the disclosure of which may jeopardize security and threaten human life. Accordingly, he in principle does not oppose the United States' extraordinarily broad assertion of privilege or its Motion for a Protective Order. Both are appropriate in light of the issues raised by Plaintiff Sakab's claims.

However, the exclusion of the extraordinarily broad category of information deemed "Privileged Information" by the United States, U.S. Mot., Ex. B ¶ 1, presents insurmountable challenges to Dr. Saad in his defense against this lawsuit. The main question in this case is necessarily whether funds supposedly stolen by Dr. Saad were in fact paid to him by the then-Crown Prince of Saudi Arabia in recognition of and in connection with Dr. Saad's work on, and in some cases to carry out, clandestine and sensitive operations with the U.S. Intelligence Community. The United States' assertion of the privilege prohibits any reference to the "activities" or "interests" of the United States Intelligence Community, Haines Decl. ¶ 12, including documents and other evidence that are central to resolving this dispute. Thus, as the United States acknowledges, *see* U.S. Mot. at 8, dismissal may indeed be necessary. Yet, in its current form, the proposed Protective Order bars Defendants from referring to Privileged Information even in a motion to dismiss. Accordingly, while Dr. Saad supports entry of a protective order, the United States' proposed Protective Order should be amended to allow Defendants to explain directly to the Court why the case should be dismissed, including because (1) the United States' broad assertion of privilege will impair and effectively deprive Defendants of valid claims and defenses

---

[1] David Ignatius, *This Former Intelligence Official Was a Hero. He's Now the Target of a Brutal Campaign by MBS*, The Washington Post (May 28, 2020), https://www.washingtonpost.com/opinions/2020/05/28/this-former-intelligence-official-was-hero-hes-now-target-brutal-campaign-by-mbs/.

and/or (2) the litigation is otherwise incapable of judicial resolution due to the breadth of the United States' assertion of privilege.[2] In Section II of this Response, Dr. Saad proposes language to be added to the Protective Order with respect to the briefing of a motion to dismiss.

Should the litigation not be dismissed, the parties will necessarily have to seek relief from the Protective Order, so Dr. Saad has proposed, and the United States has consented to include, additional language to the Protective Order preserving the parties' ability to seek relief from its terms as needed. That language is included in Section III of this Response.

## I.     STATE SECRETS ARE ESSENTIAL TO THE CLAIMS AND DEFENSES IN THIS LITIGATION.

Plaintiff Sakab Saudi Holding Company ("Sakab") has filed litigation that necessarily implicates sensitive matters of U.S. national security, including the very identity of the Plaintiff, its activities, its financial transactions, its bookkeeping, its partners, and the activities of Dr. Saad. As Dr. Saad has explained, "Sakab was created with the primary purpose of funding and undertaking clandestine and sensitive operations in partnership with the United States Government." Notice of Removal, ECF No. 1, at ¶ 2; *see also* Compl. ¶¶ 17, 40-43, 46. That work was undertaken at the direction of the then-Crown Prince—who has since been tortured and disappeared by the current Crown Prince.

Litigation of Sakab's claims and Dr. Saad's counterclaims will require examination of the programs and operations Dr. Saad was compensated for leading or overseeing, how those programs and operations were funded, why the funding in some cases may have been especially opaque, and whether, based on those details, the then-Crown Prince and Dr. Saad acted within the bounds of

---

[2] Counsel for Dr. Saad met and conferred with the Government, and the United States does not consent to allowing Defendants to submit Privileged Information to the Court for the purpose of seeking dismissal.

their authority under Saudi law in carrying out Sakab's purpose, *i.e.*, covert counterterrorism operations in partnership with the U.S. Government. Examining and litigating these issues will necessarily involve "information concerning . . . activities, or interests of the [United States Intelligence Community]" Haines Decl. ¶ 12. Nor is it possible to explore the claims and defenses of Sakab without examining the "methods" and "capabilities" of the United States Intelligence Community with whom Sakab was created to partner. *Id.*[3]

While Sakab may argue that a Protective Order is unnecessary because Sakab wishes only to obtain prejudgment attachment and then to stay the litigation indefinitely, Sakab's desire to avoid the merits does not make the merits irrelevant. Quite the opposite: To seek prejudgment attachment, Sakab would bear the burden of demonstrating a likelihood of success on the merits of its claims. *See Hayes v. CRGE Foxborough, LLC*, 167 F. Supp. 3d 229, 238 (D. Mass. 2016) (stating the central question is "whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount" (citation omitted)); *see also* Mass. R. Civ. P. 4.1(c) (prejudgment attachment of property available only after notice, hearing, and a finding of a "reasonable likelihood that plaintiff will recover judgment" equal or greater to the amount of the attachment); Fed. R. Civ. P. 64 (prejudgment attachment available to the extent permitted by state law). Doing so places the merits directly at issue, even if the only relief Sakab seeks at this time is prejudgment attachment. And Sakab cannot avoid the merits by appealing to "comity"; that is not a magic word that excuses Sakab's burden of proof, particularly because the Canadian orders were issued ex parte, are preliminary and non-final, and litigation in Canada is ongoing. *See* U.S. Mot.

---

[3] To date, Dr. Saad has not disclosed Privileged Information essential to his defense in this case and in the related litigation pending in other jurisdictions, to his great detriment. In Canada, for example, Dr. Saad has not yet presented complete evidence on the merits of the claims due to concerns about disclosing sensitive information, among other reasons—and he has suffered negative outcomes on interlocutory motions based on the incompleteness of the record.

at 2; Compl. ¶ 6. Therefore, Sakab must meet its burden as to the merits of its claims to obtain even preliminary relief in this jurisdiction; Defendants are entitled to defend against a prejudgment attachment on the merits; and a protective order is necessary and appropriate, because the merits of Sakab's claims unavoidably implicate information identified by the United States as state secrets.

## II.    THE GOVERNMENT'S PROPOSED PROTECTIVE ORDER SHOULD BE AMENDED BECAUSE IT PROVIDES NO MEANS BY WHICH DEFENDANTS CAN MOVE FOR DISMISSAL.

The United States seeks to exclude from this litigation any "information concerning . . . activities [or] interests of the [United States Intelligence Community.]" Haines Decl. ¶ 12. And its proposed Protective Order would require parties to exclude any such information in any materials in this litigation, *even before* submitting all pleadings, motions, and discovery requests to the United States for the proposed pre-filing review. Thus, as drafted, the proposed Protective Order contains no provision that would allow the parties to reference Privileged Information in explaining directly to the Court—or even initially to the Government—how the United States' privilege assertion will affect the litigation, including how it deprives Defendants of key defenses and claims, and how the Privileged Information is necessarily implicated by the very subject of the litigation.

The proposed Protective Order will severely distort the normal functioning of the adversarial process. It will deprive Dr. Saad and his Co-Defendants of their ability to defend against Sakab's claims, and will preclude Dr. Saad from litigating his counterclaims as well. The proposed Protective Order therefore must be amended to ensure, at a minimum, that Defendants are able to explain to the Court, with reference to any relevant facts, why dismissal is necessary in light of the privilege asserted by the United States.

As the United States acknowledges, the Court will ultimately "need to consider whether and to what extent the exclusion of privileged information would affect the litigation," and it "may require dismissal," as is often the case when the privilege is invoked. *See* U.S. Mot. at 8; *see generally, e.g.*, *Abilt v. Cent. Intel. Agency*, 848 F.3d 305 (4th Cir. 2017); *Mohamed v. Jeppesen Dataplan, Inc*., 614 F.3d 1070 (9th Cir. 2010) (en banc). In particular, dismissal is warranted where the privilege deprives the defendant of the ability to present a valid defense, where the privilege prevents the plaintiff from proving its prima facie case, or where litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets. *See, e.g.*, *White v. Raytheon*, No. CIV.A. 07-10222, 2008 WL 5273290, at *5 (D. Mass. Dec. 17, 2008) (dismissing litigation after the United States asserted state secrets privilege and obtained a protective order because it undermined Raytheon's ability "to mount a fair defense without revealing state secrets"); *Trulock v. Lee*, 66 Fed. App'x 472, 478 (4th Cir. 2003) ("It would be impossible for a jury to make the necessary findings with the protective order in place. . . . Once the protective order was in place, the case could not go forward."); *see also Abilt*, 848 F.3d at 316 ("We have consistently upheld dismissal when 'the defendants could not properly defend themselves without using privileged information' and the 'main avenues of defense available' would require privileged information."); *Tenenbaum v. Simonini*, 372 F.3d 776, 777 (6th Cir. 2004) (affirming dismissal of litigation when "Defendants cannot defend their conduct with respect to Tenenbaum without revealing the privileged information" and "the state secrets doctrine thus deprives Defendants of a valid defense to the Tenenbaums' claims"); *Zuckerbraun v. Gen. Dynamics Corp*., 935 F.2d 544, 547–48 (2d Cir. 1991) (affirming dismissal because "[t]he factual questions concerning the liability of the defendants . . . cannot be resolved or even put in dispute without access to" certain data that was "in its entirely classified and subject to the claim of privilege"); *Mohamed*, 614 F.3d

6

at 1087 (holding dismissal was required "because there is no feasible way to litigate Jeppesen's alleged liability without creating an unjustifiable risk of divulging state secrets").

Though the Court need not decide at this time whether dismissal is warranted, the Protective Order must include provisions that allow the parties a fair opportunity to present such a motion. Defendants can discern no such mechanism in the Protective Order proposed by the United States. To present their arguments for dismissal, Defendants must be able to explain, at a minimum, *why* the United States' assertion of privilege deprives Defendants of valid defenses, which will require articulation of *what those defenses are* and *how they are impaired by the privilege*. But under paragraph 3, even draft case filings that must be submitted for the Government's review prior to filing must *already* exclude the information over which the Government has asserted a privilege, and case filings must exclude "any further information designated as privileged by the Government" pursuant to its review. U.S. Mot. Ex. B ¶ 3. Failure to comply, even inadvertently, risks sanctions. *Id*. ¶ 2. And although the proposed Protective Order contains a mechanism for the Court to resolve disputes over whether information is privileged, that mechanism *is itself governed by the Protective Order*; thus, it still precludes any privileged information from being shared with either the Government (in pre-filing submissions) or with the Court when litigating such a dispute. *Id.* ¶¶ 3, 12. Because of these provisions, Defendants' ability to move for dismissal would be dramatically impaired, and they could risk sanctions for doing so. Likewise, the Court would have no means of accessing the information *it* needs to decide whether dismissal is appropriate.

In significant respects, the proposed Protective Order here differs from protective orders issued in other cases involving the state secrets privilege. The combination of the Government's broad privilege assertion in this litigation, onerous pre-filing-review requirements, and sanctions

for even inadvertent disclosure appears to be unprecedented.[4] Typically, the category of privileged information identified by the United States is relatively narrow and well-defined. In *Etreppid Technologies, LLC v. Montgomery*, for example, the protective order covered relationships and transactions between the U.S. Intelligence Community and the parties involved in the litigation, as well as the particular technologies at issue in the litigation. Protective Order, *Etreppid*, No. 06-cv-00056-MMD-VPC, ECF No. 83-4, at ¶¶ 2-3 (Sept. 25, 2006). And in *White*, the protective order covered a relatively circumscribed category of information related to the PATRIOT Missile System over which the United States had asserted the state secrets privilege. Protective Order, *White*, No. 07-cv-10222-RGS, ECF No. 44-2, at ¶ 2 (Sept. 10, 2008). Here, by contrast, the United States defines as privileged not only all "[i]nformation concerning sources, methods, capabilities, activities, or interests of the United States Intelligence Community," but also "information that might tend to reveal or disclose the identities of United States Government employees, affiliates, or offices with whom one or more of the parties or the Kingdom of Saudi Arabia may have had certain interactions" where that disclosure "would be damaging to U.S. national security interests." *See* U.S. Mot. Ex. B ¶ 1. When the Plaintiff itself is an entity that was created for the purpose of engaging in intelligence activities with the United States Government, the United States' definition of excluded information is unworkably broad, vague, and makes it difficult for the parties to comply. Under the Protective Order, as proposed, Dr. Saad cannot even submit *to the United States* a motion to dismiss that articulates why the assertion of the privilege makes it impossible to litigate this case, because doing so would have to touch on the "interests" and "activities" of the U.S.

---

[4] Upon a search for publicly available protective orders entered pursuant to the United States' motion and assertion of the state secrets privilege, counsel could find no prior example of a protective order that used this sort of broad privilege assertion, onerous pre-filing-review requirements, and sanctions for inadvertent disclosure in combination to prohibit parties from presenting arguments to the Court for dismissal.

Intelligence Community and information that *might* tend to reveal or disclose what may not be disclosed and *might* be damaging to U.S. national security interests. Filing a motion could risk sanctions, absent amendment of the proposed Protective Order.

Accordingly, Dr. Saad requests that the Protective Order entered by this Court be modified, so as to include a mechanism that protects Defendants' ability to explain to the Court why dismissal is necessary in light of the broad privilege asserted by the United States. Specifically, the Order should include the following addition:

> **The requirements set forth in this Protective Order shall not apply to any filings in connection with a motion to dismiss on the basis of the United States' assertion of the state secrets privilege. Privileged Information may be included in such filings, which shall be treated as Highly Sensitive Documents and filed directly with the Court in accordance with Standing Order 21-1, as amended January 26, 2021, regarding Highly Sensitive Documents Filing, Service, and Management.**

This addition would ensure that Defendants have an opportunity to present a motion to dismiss directly to the Court without revision or alteration by the United States, balancing the national security interests of the United States with the parties' and the Court's need to assess whether these matters can be litigated at all. Defendants must be able to explain why the claims and defenses in this litigation necessarily implicate the "methods, capabilities, activities, or interests" of the U.S. Intelligence Community, among other categories of Privileged Information, in sufficient detail for the court to weigh the merits of a motion to dismiss. Thus, the Protective Order must allow Defendants to articulate with specificity (1) why the United States' broad assertion of privilege deprives Defendants of valid claims and defenses, including how those claims and defenses are impaired by the privilege; and (2) why the litigation is otherwise incapable of judicial resolution due to the breadth of the United States' assertion of privilege.

### III.   DR. SAAD RESERVES HIS REMAINING OBJECTIONS TO THE PROTECTIVE ORDER PENDING A DECISION ON DISMISSAL.

Dr. Saad believes the litigation will be dismissed due to the United States' assertion of the state secrets privilege. But should the litigation continue, the terms of the Proposed Order are onerous and likely to be impracticable in many respects. For example, the United States would have *carte blanche* to reject substantive arguments made in filings, ECF No. 47 Ex. B ¶¶ 2-3; preclude any proposed discovery requests or responses, including entire documents, *id.* ¶ 5(a)-(c), and even preclude discovery of entire topics, *id.* ¶¶ 5-7; refuse to provide witnesses who can verify critical facts, and instruct counsel not to ask—or witnesses not to answer—any particular questions or questions falling into certain topics, *id.* ¶¶ 7(a), (e). Further, any dispute with the Government over its exercise of its rights under the proposed protective order would still be *governed by the Protective Order*, and thus the parties would be prevented from fully presenting to the Court the nature of the dispute because parties are precluded from including any Privileged Information in any filings. *Id.* ¶ 12, 3. Indeed, the parties would risk sanctions for even inadvertent violations of the proposed protective order. *Id.* ¶ 2. Combined with a vague and extremely broad definition of "Privileged Information," *id.* ¶ 1, the Protective Order would be onerous and highly prejudicial to Defendants, and difficult or even impossible for the Court to manage.

Given these likely challenges, Dr. Saad has proposed, and the United States has consented to include, the following additional language at the end of Paragraph 12 of the Protective Order clarifying the parties' rights to seek relief from its terms: "**A Party may seek relief from any of the terms of this Protective Order, so long as the Party follows the procedures specified in this paragraph.**"

## IV.  CONCLUSION

For the reasons discussed above, Dr. Saad requests the insertion of certain additional language, as proposed herein, to the Protective Order.

Dated: September 17, 2021

Respectfully submitted,

By:  */s/  Scott C. Ford*

R. Robert Popeo (BBO #403360)
Scott C. Ford (BBO # 629280)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, PC
One Financial Center
Boston, MA 02111
Phone:  (617) 348-1744
Fax:  (617) 542-2241
rrpopeo@mintz.com
scford@mintz.com

Lindsay C. Harrison (pro hac vice)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Phone:  (202) 639-6865
Fax:  (202) 639-6066
lharrison@jenner.com

*Attorneys for Saad Khalid Aljabri & Khalid Saad Khalid Aljabri*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the above Response to the U.S. Government's Motion for a Protective Order and all associated papers were filed electronically and served on the parties and counsel for the Government using the CM/ECF system on September 17, 2021.

*/s/ Scott C. Ford*
Scott C. Ford
