**United States District Court**
**District of Massachusetts**

```
_____
                             )
Sakab Saudi Holding Co.,     )
                             )
          Plaintiff,         )
                             )
     v.                      )
                             )       Civil Action No.
Saad Khalid S Aljabri, et al., )     21-10529-NMG
                             )
          Defendants.        )
                             )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Sakab Saudi Holding Co. ("Sakab" or "the plaintiff") is a Saudi Arabian corporation established for the purpose of supporting anti-terrorism activities. It is indirectly owned by the Public Investment Fund of Saudi Arabia, which is a sovereign wealth fund of the Kingdom of Saudi Arabia. Defendant Saad Aljabri is a former senior Saudi government official. Defendants Khalid and Mohammed Aljabri are Saad Aljabri's sons. The Aljabris are managers or directors of defendant companies New East (US) Inc., New East 804 805 LLC and New East Back Bay LLC ("the New East defendants" and, together with the Aljabris, "the defendants"). The second and third New East defendants are entities organized in Massachusetts.

-1-

Plaintiff contends that Saad Aljabri and the other individual defendants perpetrated a massive fraud on it, expropriating from Sakab and related companies approximately $3.5 billion.  It further asserts that the funds allegedly obtained by fraud have been distributed to various companies, including the New East defendants and used for, inter alia, the purchase of real estate in Massachusetts and elsewhere. Defendants deny that any fraud took place and assert that the instant action is part of a campaign of politically-motivated harassment by the Saudi government because of Aljabri's association with the former crown prince, Mohammed bin Nayef.

On January 22, 2021, plaintiff sued these and other defendants in the Ontario (Canada) Superior Court, alleging similar large-scale financial wrongdoing as it does here.  It immediately moved for, and was granted, ex parte relief in the form of a Mareva injunction, which is a kind of prejudgment order available under Canadian law to restrain a defendant from dissipating its assets. See Grupo Mexicano De Desarollo v. Alliance Bond Fund, 527 U.S. 308, 327-29 (1999).  In that case, the Canadian court also appointed a receiver (KSV Restructuring, Inc.) to manage certain assets and properties of the New East defendants, and issued a disclosure order requiring certain Canadian and international financial institutions to disclose

and produce information to the plaintiff in connection with the pending Ontario action.

On March 24, 2021, Sakab sued the defendants in Massachusetts Superior Court, alleging ten state law causes of action.  That action was promptly removed by defendants to this Court on federal question grounds.  On April 9, 2021, Sakab moved to remand this action to state court.  Shortly thereafter, the United States ("the government") noticed its potential participation in this action and requested the Court to extend defendants' deadline to respond to the motion to remand.  The Court allowed the government's request.  On August 3, 2021, the government moved to intervene and to stay briefing on the pending motion to remand on the grounds that further briefing would likely reveal state secrets.  On August 23, 2021, the Director of National Intelligence, Avril Haines, formally invoked the state secrets privilege and a statutory privilege pursuant to 50 U.S.C. § 3024(i)(l).

In "general and unclassified terms", Director Haines asserted the state secrets and statutory privileges as to information

> concerning sources, methods, capabilities, activities, or interests of the [United States Intelligence Community], as well as information that might tend to reveal or disclose the identities of U.S. Government employees, affiliates, or offices with whom one or more of the parties or the Kingdom

> of Saudi Arabia may have had certain interactions and the
> disclosure of which would be damaging to U.S. national
> security interests.

Docket No. 47.

In support of that claim of privilege, Director Haines

lodged for the Court's review a classified <u>in camera</u>, <u>ex parte</u>

declaration.  <u>See</u> Docket No. 48.  That declaration relates to

the claim of state secrets made in the government's non-

classified filing but cannot be described in greater detail

without risking public disclosure of the highly classified

information contained therein.

The Court now is confronted with resolving four issues: 1)

whether the government may intervene, 2) if so, whether it has

asserted a valid privilege claim, 3) whether to remand the

action to the state court and 4) whether it should, <u>sua sponte</u>,

dismiss the action.

## I.   <u>The Government's Motion to Intervene</u>

The government has moved to intervene as of right in this

action under Rule 24 of the Federal Rules of Civil Procedure.

The plaintiff opposes that motion.

Rule 24(a)(2) provides for intervention as of right to any

party who claims an interest relating to the property or

transaction that is the subject matter of the action, and is so

situated that disposing of the action may, as a practical

matter, impair or impede the intervenor's ability to protect its
interest. Fed. R. Civ. P. 24(a)(2), see Students for Fair
Admissions, Inc. v. President & Fellows of Harvard Coll., 807
F.3d 472, 474 (1st Cir. 2015) (requiring that intervenors as of
right under Rule 24(a)(2) demonstrate that their motion is
timely, that they have an interest in the action, the
disposition of which threatens their interest, and that no
existing party adequately protects it).

Here, the government has met the requirements of Rule
24(a)(2). The government's interest in preventing the
disclosure of state secrets is obvious and uncontested. See
Dept. of the Navy v. Egan, 484 U.S. 518, 527 (1988) (stating
that the government has a "compelling interest in withholding
national security information from unauthorized persons in the
course of executive business") (internal punctuation omitted).

Equally apparent is that the disposition of this matter
threatens that interest. Defendants have represented that the
information over which the government claims a privilege is
essential to their defense and must be introduced herein.
Plaintiff asserts that no threat of disclosure exists because it
seeks only a pre-judgment attachment to which it is purportedly
entitled on the basis of comity without reaching the merits and
without implicating privileged information but its argument is

-5-

unavailing.  Setting aside the fact that the plaintiff has, to
this point, furnished no authority warranting a comity-based
prejudgment attachment, it misstates the Rule 24(a)(2) standard.
See Hayes v. CGRE Foxborough, LLC, 167 F. Supp. 3d 229, 237-38
(D. Mass. 2016) (explaining that a plaintiff who seeks
prejudgment attachment must demonstrate, inter alia, a
reasonable likelihood of success on the merits).  Rule 24(a)(2)
provides for intervention by any party who claims an interest
relating "to the property or transaction that is the subject of
the action" and to whom disposition of the action "may" as a
practical matter impede the protection of the interest. Fed. R.
Civ. P. 24(a)(2).  Notwithstanding plaintiff's request for a
disposition without consideration of the merits, the subject
matter of his action for fraud is defendants' property and
transactions which implicate the state secrets claim asserted by
the government.  Disposition of plaintiff's claims "could
result" in the disclosure of privileged information and that is
all Rule 24 demands. B. Fernandez & Hnos., Inc. v. Kellogg USA,
Inc. 440 F.3d 541, 545-46 (1st Cir. 2006).

    Furthermore, no existing party adequately represents the
government's interests.  The burden of establishing inadequate
representation is minimal and is satisfied by a showing that the
representation of the interest at issue may be inadequate, and
the government has satisfied that burden here. Id.  Defendants

-6-

have asserted that the disclosure of the subject information is
necessary for their defense and therefore they are ill-suited to
protect the government's interest in non-disclosure.  While the
plaintiff is similarly interested in the non-disclosure of the
information, it is a foreign entity and as such cannot be fully
aligned with the national security interests of the United
States government or capable of adequately representing them.

     Finally, the litigation remains at an early stage, and the
government notified the Court of its potential interest at an
even earlier date, April 26, 2021. See Negron-Almeda v.
Santiago, 528 F.3d 15, 22 (1st Cir. 2008).

     The Court will, therefore, allow the government's motion to
intervene in this action as of right under Rule 24.

**II.   The State Secrets Privilege**

     The government has asserted the state secrets and related
statutory privileges and has moved for a protective order to
exclude information protected by those privileges.

     The state secrets privilege is a common law evidentiary
rule that protects information from discovery when disclosure
would be inimical to national security. In re Sealed Case, 494
F.3d 139, 142 (D.C. Cir. 2007), United States v. Reynolds, 345
U.S. 1 (1953).  The privilege protects a wide range of state

secrets, including information that, if disclosed, would result
in an impairment of the nation's defense capabilities,
disclosure of intelligence-gathering methods or capabilities and
disruption of diplomatic relations with foreign governments.
White v. Raytheon Co., 2008 U.S. Dist. LEXIS 102200 at *6-7 No.
07-cr-10222 (D. Mass. Dec. 17, 2008) (citing Ellsberg v.
Mitchell, 709 F.2d 51, 57 (D.C. Cir. 1983)).  It is not to be
lightly invoked because, once asserted, the privilege is
absolute, and cannot be compromised by any showing of need by
the party seeking the information. Reynolds, 345 U.S. at 7,
Northop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 399
(D.C. Cir. 1984).

The state secrets privilege belongs to the government and
can only be asserted by it. El-Masri v. United States, 479 F.3d
296, 304 (4th Cir. 2007) (citing Reynolds, 345 U.S. at 7).  As a
procedural matter, the government must make a formal claim of
privilege, lodged by the head of the department which has
control over the matter and after actual personal consideration
by that officer. Id.

An assertion of the state secrets privilege is afforded the
utmost deference, and the Court's review is tightly
circumscribed. White at *3 (quoting Kasza v. Browner, 133 F.3d
1159, 1166 (9th Cir.  1998)), see also Zuckerbraun v. Gen.

Dynamics Corp., 935 F.2d 544, 547 (2d Cir. 1991).  When
reviewing such a claim, the sole substantive determination for
the Court is whether, under the particular circumstances of the
case, there is a reasonable danger that compulsion of the
evidence will expose matters which, in the interest of national
security, should not be divulged. White at *8 (citing Kasza 133
F.3d at 1166).  If the government makes such a showing, the
Court must uphold its claim of the state secrets privilege.

     The Court has reviewed, ex parte and in camera, the
classified declaration submitted by the government.  It is
satisfied that the government's assertion of the state secrets
privilege is procedurally proper and validly taken.  Because of
the breadth of the claim and the highly sensitive nature of the
privileged material, the Court will not further elaborate upon
its reasoning which would necessarily result in disclosure of
privileged information.[1]

     The Court acknowledges that the assertion of the state
secrets privilege by the government essentially precludes the
defendants from being able to refute the plaintiff's claims.
Such may be the effect of a successful invocation of the state

---

[1] Following the approach taken by Judge Stearns in White, the
Court directs the government by way of this footnote to make the
non-public declaration available to the Court of Appeals for
review should an appeal follow and that court so request. See
White at *18 n.7.

-9-

secrets privilege: the evidence encompassed thereby is removed
from the proceedings entirely. El-Masri, 479 F.3d at 306.  That
is so despite the fact that a claim of the state secrets
privilege will "often impose a grievous hardship, for it may
deprive parties . . . . of power to assert their rights or
defend themselves.  That is the consequence of any evidentiary
privilege." United States v. Coplon, 185 F.2d 629, 638 (2d Cir.
1950).

The potential unfairness of that result has been remedied
by the practice of several courts of appeals and by this
district court of dismissing actions after a successful
invocation of the state secrets privilege where the defendant
can demonstrate that he cannot properly defend himself without
use of the privileged evidence. See, e.g., In re Sealed Case,
494 F.3d at 149 (collecting cases), Wikimedia Found. v.
NSA/Central Sec. Serv., 14 F.4th 276 (4th Cir. 2021), White at
*11-12, see also Farnsworth Cannon, Inc., v. Grimes, 635 F.2d
268, 276-77 (4th Cir. 1980) (Phillips, J., dissenting)
(describing the problem created by a claim of state secrets
privilege in litigation between private parties as "sui generis
in the administration of justice").  For that reason, the
determination of whether a successful interposition of the state
secrets privilege by the government requires dismissal of the
action has been described as the final step in the analysis of

the privilege claim. See El-Masri, 479 F.3d at 304 (stating that a court faced with a state secrets privilege question is "obliged to resolve the matter by use of a three-part analysis").

In this case, the defendants cannot fairly defend themselves without resort to privileged information. Wikimedia Found., 14 F.3d at 304 (quoting In re Sealed Case, 494 F.3d at 149).  Plaintiff brings numerous state law claims relating to an alleged fraudulent scheme whereby defendant Saad Aljabri expropriated large sums of money from it.  While plaintiff has, in the Ontario action, shown through non-privileged reports of its forensic accountant the movement of funds allegedly expropriated, any attempt by defendants to rebut those allegations, i.e. to establish the legitimacy and legality thereof, would necessarily result in the examination and disclosure of privileged information concerning counter-terrorism activities undertaken in partnership with the United States government.  Where any valid defense would require introduction of privileged materials, dismissal is warranted. Id., see White at *18.

Consequently, the Court will direct plaintiff to show cause why, in light of the accepted assertion of the state secrets privilege, the pending action should not be dismissed.

Plaintiff will not describe or refer to any privileged
information in its show cause pleadings that in any way

> concern[s] sources, methods, capabilities, activities, or
> interests of the United States Intelligence Community, as
> well as information that might tend to reveal or disclose
> the identities of government employees, affiliates, or
> offices with whom one or more of the parties or the Kingdom
> of Saudi Arabia may have had certain interactions and the
> disclosure of which would be damaging to national security
> interests of the United States.

Docket No. 57-1.  The Court will make any appropriate
accommodation and, if necessary, conduct an in camera hearing to
consider responses to plaintiff's submission.

### III.  **The Plaintiff's Motion to Remand**

Finally, the Court considers the plaintiff's motion to
remand.

On April 9, 2021, the plaintiff moved to remand to state
court the pending case which had previously been removed to this
court on federal question grounds. In support of remand,
plaintiff contends that 1) no claim arises or turns on a
disputed issue of federal law, 2) the action does not involve
the United States government and 3) it does not implicate
government state secrets.  Because the government's motion to
intervene will be allowed, the second and third arguments are
now moot.  The Court will thus consider only whether there is a
disputed issue of federal law, as well as the government's

contention that jurisdiction is proper under 28 U.S.C. § 1442(a)(1).

While, to date, the government has moved only to stay plaintiff's motion to remand, which is yet to be opposed by defendants, the Court deems it necessary at this time to consider its own jurisdiction.[2] See Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013) (stating that federal courts are obliged to resolve questions pertaining to subject matter jurisdiction before addressing the merits of a case).

The removing party has the burden of establishing federal jurisdiction, Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009), and uncertainties are resolved in favor of remand, Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). Typically, federal jurisdiction is ascertained from the face of the state court complaint. Id. at 4 (citing Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), see Gunn v. Minton, 568 U.S. 251, 257 (2013) (observing that the "vast bulk" of cases arising under federal law do so because of a federal cause of action). Here,

---

[2] The Court has extended the deadline for defendant to respond to the motion to remand pending resolution of the government's motions to intervene and for a protective order.

the state court complaint raises a myriad of state law fraud and related claims none of which compels federal jurisdiction.

A case may, however, be subject to federal jurisdiction even where federal law does not enable the cause of action asserted. Gunn, 568 U.S. at 257. Among this "special and small category" of cases are those raising embedded federal issues. Id. at 258, Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (describing the doctrine as a "longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction"), see § 3562 The Meaning of "Arising Under", 13D Fed. Prac. & Proc. Juris. § 3562 (3d ed.). Federal issues are not excluded from federal court "simply because they appear in state raiment", but their mere invocation is not "a password opening federal courts to any state action embracing a point of federal law." Grable, 545 U.S. at 314. Rather, under the embedded federal issue doctrine, federal jurisdiction over a state law claim will lie if a federal issue is 1) necessarily raised, 2) actually disputed, 3) substantial and 4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Gunn, 568 U.S. at 258 (citing Grable, 545 U.S. at 313-14).

In In re NSA Telcomms. Records Order Litigation, the
District Court for the Northern District of California
considered an issue similar to the one presented here. 483 F.
Supp. 2d 934 (N.D. Cal. 2007).  In that case, plaintiffs brought
suit in California state court to enjoin the disclosure by
defendants Verizon and AT&T of telephone calling records of its
California customers to the National Security Agency ("the NSA")
in violation of California state law. Id. at 937.  The
defendants removed the case, and the district court denied
plaintiffs' motion to remand. Id. at 943.  It did so because,
inter alia, the likely intervention and assertion of the state
secrets privilege represented an embedded federal issue
establishing federal jurisdiction. Id. at 941-43.

The embedded federal issue doctrine similarly supports the
exercise of federal jurisdiction here.  First, a federal issue
will necessarily be raised.  Any possible defense to the state
law claims implicates evidence that the government has asserted
to be state secrets.  The Fourth Circuit Court of Appeals has
thoughtfully observed that, although the state secrets privilege
was developed at common law, it possesses a constitutional
dimension because it concerns areas of Article II duties, such
as military and foreign affairs, with respect to which the
courts have traditionally shown "the utmost deference" to
executive responsibilities. El-Masri, 479 F.3d at 303-04 (noting

-15-

that the state secrets privilege has "a firm foundation in the Constitution"), see United States v. Nixon, 418 U.S. 683, 710 (1974) (observing that courts have shown particular deference to Article II duties in the realm of foreign policy).  The factual issues at the core of this case are intertwined with the government's assertion of the state secrets privilege.  In considering a defense raised by the defendant, the Court must necessarily address the validity and scope of the government's privilege claim.  That will require application of the federal issue, i.e. the privilege claim, to the facts of the case. See Gunn, 568 U.S. at 259.

Second, the federal issue is actually disputed.  Defendants have opposed the proposed protective order for excluding an "extraordinarily broad" category of information under the state secrets privilege.  As noted above, assertion of the state secrets privilege may require dismissal of the action.  If it does not, defendants have stated their intention to seek relief from the protective order, casting in dispute once again the government's assertion of the privilege. See id.  In sum, the "effect of federal law", i.e. the constitutional dimension of the state secrets privilege, is, and likely will remain, in dispute throughout this case. Gunn, 568 U.S. at 260, see El-Masri, 479 F.3d at 303-04.

Third, the issue is substantial.  In Gunn, the Supreme Court explained that it is not enough that the federal issue be significant to the particular parties in the suit. Gunn, 568 U.S. at 260.  Rather, it must also be important to the federal system as a whole. Id.  Here, the state secrets issue is "substantial in the relevant sense". Id.  The resolution of the state secrets issue implicates separation of powers concerns important to the federal system as a whole. See El-Masri, 479 F.3d at 304.  Any determination of state secrets issues will depend, in part, upon the constitutional issue of the separation of powers. See Nixon, 418 U.S. at 710.

Fourth, the issue is capable of resolution in federal court without disrupting the federal-state balance.  There is a strong judicial interest in maintaining the constitutional plan of separation of powers. Fleming v. United States Dep't of Agric., 987 F.3d 1093, 1110 (D.C. Cir. 2021) (citing Glidden Co. v. Zdanok, 370 U.S. 530, 536 (1962)).  Because the assertion of the state secrets privilege pertains to the separation of powers, it is not only capable of being resolved in federal court, but also most appropriately resolved here.  El-Masri, 479 F.3d at 303 (citing Nixon, 418 U.S. at 710).

Finally, the government has asserted that it may remove any action from state court to which it is a party, citing 28 U.S.C.

-17-

§ 1442(a)(1), and thus a remand would be futile.  The Court is underwhelmed by that argument. See 28 U.S.C. § 1442(a)(1) (requiring for removal that a civil action be "against or directed to" the government), accord Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1249-51 (9th Cir. 2017).  Nevertheless, because the Court is satisfied that it possesses jurisdiction under the embedded federal issue doctrine, it declines to address whether it may also exercise jurisdiction under § 1442(a)(1).

**ORDER**

For the foregoing reasons,

1) government's motion to intervene and motion for stay of briefing on the motion to remand (Docket No. 40) is, with respect to the motion to intervene, **ALLOWED,** but with respect to the motion for stay of briefing, **DENIED as moot;**

2) government's motion for a protective order (Docket No. 47) is **HELD UNDER ADVISEMENT** pending consideration of plaintiff's show cause pleading, after which the motion will be decided forthwith;

3) plaintiff's motion to remand (Docket No. 17) is **DENIED;** and

4) plaintiff's motion for a procedural order (Docket No. 59)
   is **DENIED without prejudice.**

Plaintiff is directed to file, on or before Tuesday, November 9, 2021, a memorandum not to exceed ten pages to show cause why this case should not be dismissed.  The Court will hold a status conference on Friday, November 12, 2021, at 11:00 a.m. (in camera, if necessary) to consider whether further briefing on the issue is required.

**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated October 26, 2021